# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Walter Tolander, Individually and
Derivatively on behalf of RT Transportation, LLC

     Plaintiff,

v.                                                                     Case No. _____

Kevin Rausch
Jeff Smith
Sterling Diesel Service, Inc.

     Defendants,

and

RT Transportation, LLC, nominal defendant

---

## VERIFIED COMPLAINT

---

     COMES NOW, Walter Tolander, Individually and Derivatively on behalf of RT Transportation, LLC, and submits his Verified Complaint against defendants Kevin Rausch, Jeff Smith, Sterling Diesel Service, Inc. and RT Transportation, LLC (nominal defendant) as follows:

### Introduction

     1.     This is an action arising out of the breakup of a commercial trucking business. Defendants Kevin Rauch, Jeff Smith, and Sterling Diesel Service, Inc., unlawfully and wrongfully conspired with one another to appropriate for their own benefit the assets of RT Transportation, LLC and Walter Tolander.  Walter Tolander, individually and derivatively on behalf of RT Transportation, LLC, seeks damages in an amount to be proven at trial.

### The Parties, Jurisdiction and Venue

1

2. Plaintiff Walter Tolander ("Tolander") resides in Nebraska.

3. Upon information and belief, Kevin Rausch ("Rausch") resides in Sterling, Colorado.

4. Upon information and belief, Jeff Smith ("Smith") resides in Colorado, in the Denver metropolitan area.

5. RT Transportation, LLC ("RT") is a dissolved limited liability company formerly with a place of business located 120 South 3rd Avenue, Sterling, CO 80751.

6. Sterling Diesel Service, Inc. ("Sterling Diesel") is a Colorado Corporation with its principal offices located at 160 Edwards Ave., Sterling, CO 80751.

7. Upon information and belief, Sterling Diesel is owned and operated by Rausch.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that complete diversity of citizenship exists between the plaintiff and defendant and the amount in controversy exceeds $75,000 exclusive of interest or costs.

9. Venue in this Court is proper under 28 U.S.C. § 1391(b) in that all defendants reside in the same state.[1]

**Facts Common to All Counts**

10. On June 12, 2014, RT was formed with a principal address of 160 Edwards Ave., Sterling, CO 80751. Management was vested in the members, which were Rausch and Tolander.

11. Tolander has since resigned as a member of RT.

---

[1] Though Tolander is suing derivatively on behalf of RT Transportation, LLC, RT Transportation is treated as a defendant for the purposes of determining diversity jurisdiction. *See e.g. Beck v. Dobrowski*, 559 F.3d 680, 687 (7th Cir. 2009); *accord Smith v. Sperling*, 354 U.S. 91, 97, 77 S. Ct. 1112, 1116, 1 L. Ed. 2d 1205 (1957).

12. RT was a commercial trucking business, which during its period of operation owned several trucks, had several employees, and performed trucking contracts for customers both in Colorado and across state lines.

13. Rausch and Tolander initially set up RT as 50% members. On or about August of 2014, however, Tolander discovered Rausch had changed the parties' membership interests from 51% to 49%.

14. In 2016, Rausch began to run into financial difficulties as a result of having to defend himself in court against unrelated criminal charges.

15. Upon information and belief, and during 2017, Rausch began to divert RT jobs away from RT, using RT trucks to do the work receiving direct payment for it. These jobs included but were not limited to jobs for RT customers Chris Brauer and Burg Warner. Upon information and belief, these jobs amounted to approximately $68,000 worth of work for which Rausch received payment directly and did not account to RT for the funds received. Upon information and belief, Rausch performed additional work using RT trucks in competition with RT and for which RT was never compensated.

16. Upon information and belief, and also during 2017, Rausch did a job with Performance Plus, again using RT trucks and assets and failing to pay RT.

17. Upon information and belief, Rausch diverted additional RT jobs and work away from RT, using RT trucks and other RT assets to perform the work for which he simply kept the money.

18. In July of 2017, Rausch's case went to trial by jury and Rausch was found not guilty of two of the counts in his criminal case. However, in August of 2017, Rausch entered

into a plea agreement in connection with the criminal case. This agreement required him to pay full restitution and all court costs.

19. Having incurred substantial expenses associated with his criminal case, including the contemplated financial obligations associated with his plea deal as well as attorney's fees and costs, Rausch sought to enter into an agreement with Tolander to dissolve RT.

20. Rausch began discussions with Tolander regarding potential dissolution of RT in late September of 2017. These discussions did not result in any agreement.

21. Upon information and belief, in October of 2017, Rausch's plea deal was accepted. As a result of the jury trial and the financial obligations imposed upon him by virtue of his plea deal, Rausch's financial position worsened.

22. In December of 2017, Rausch decided to attempt to take possession of RT and its assets while forcing Tolander out of RT and attempting to have Tolander held responsible for RT liabilities.

23. Specifically, on December 11, 2017, Rausch filed articles of dissolution for RT abruptly and without prior notification to Tolander. Rausch subsequently and unilaterally assumed physical possession of all property in the RT office, took control of the RT bank account, and shut down RT"s operations.

24. Because Rausch unilaterally shut down the company, RT trucks which were in the middle of interstate trucking jobs and were not within the state of Colorado lacked the necessary Department of Transportation authorizations necessary to complete their jobs or drive across state lines.

25. On December 12, 2017, the day after Rausch unilaterally dissolved RT, Tolander telephoned Rausch regarding his decision to do so. Tolander asked Rausch "why are you doing

this?" Rausch responded "I hired a henchman to get all my money and take the company away." In that conversation, Rausch identified Smith as his "henchman."

26. Smith is not and has never been a licensed attorney.

27. At all times material to this complaint, Rausch knew Smith was not and has never been a licensed attorney, and recruited him to act as a "henchman" on his behalf despite knowing such conduct would include attempted threats, intimidation tactics, extortion attempts, and conduct otherwise constituting the unauthorized practice of law, as described herein.

28. Rausch subsequently promptly took steps to migrate all of RT's assets and funds to Sterling Diesel and/or to himself personally. Rausch drained RT's bank account so it could no longer pay its rent, and re-registered all of RT's trucks in Sterling Diesel's name.

29. Upon information and belief, Rausch subsequently caused Sterling Diesel to assume and conduct RT's business in the name of Sterling Diesel without compensating RT.

30. Neither Rausch nor Sterling Diesel compensated RT for its assets.

31. Having wrongfully diverted RT's assets, Rausch knowingly caused RT to fail to pay its debts, to pay employees, and/or to make distributions which would otherwise be owed to Tolander.

32. Rausch did not conduct a final accounting of RT's assets or liabilities or make any attempt to satisfy RT's debts.

33. Tolander has never been compensated for several items of equipment he purchased for RT. These include but are not limited to a 1999 Chevy pickup and a 1989 1600 Uhaul truck, 26 foot van box.

34. Tolander has also not been provided distributions and/or wages he is owed in connection with service he performed for RT.

35.     Tolander retained the services of an attorney, William O'Rourke ("O'Rourke"), to assist Tolander in asserting his rights as a member of RT.

36.     On December 21, 2019, O'Rourke sent a written demand to Rausch and RT, demanding that Rausch follow his fiduciary duties with respect to the dissolution and windup of RT, and that RT return Tolander's personal property located on RT's premises, including but not limited to his Harley-Davidson motorcycle, substantial amounts of his personal and confidential paperwork and files, all of the office furniture and artwork, including a computer and several copy machines, which Tolander had paid for with his own funds.

37.     While Rausch was in the process of wrongfully transferring RT's assets to Sterling Diesel, in an intentional attempt to intimidate Tolander and cause him to desist from asserting his rights as a member in RT, Smith commenced sending a series of harassing and abusive communications to Tolander and to O'Rourke.

38.     Smith sent several communications which constituted intimidation attempts, threats, and attempted extortion, including but not limited to the following communications:

   a. On January 8, 2018, Smith left a voicemail message with O'Rourke threatening to initiate an FBI investigation against O'Rourke and that Smith would "investigate" O'Rourke should O'Rourke proceed with a lawsuit on Tolander's behalf.

   b. In January of 2018, Smith made several threats against Tolander to initiate investigations and criminal prosecution in connection with accusations that Tolander owed people in Iowa money and had taken advantage of elderly people.

   c. Smith also made numerous unsubstantiated and baseless threats against Tolander claiming he stole money from RT.  In February of 2018, Smith claimed "actions

would be taken immediately" if Tolander did not stop requesting documentation from RT concerning these allegations.

39. Upon information and belief, Smith and Rausch knew the above allegations were false, and Smith at Rausch's behest sent the above communications in an effort to deter Tolander from asserting his rights as a member of RT and to provide cover for Rausch's wrongful activities as described herein.

40. On or about January 29, 2018, Rausch and Smith, with intent to permanently deprive Tolander of his personal property prevented Tolander's agents from removing Toalnder's personal property form RT's Sterling office located at 120 South 3rd Street. Smith assumed personal possession of these items with intent to permanently deprive Tolander of the same. These items of property included but were not limited to the following:

    a. 2005 Harley Davidson V-rod, Orange in Color, valued at $10,000, including the title to the vehicle.

    b. 1989 GMC C Sierra Van (AWD), valued at $1200, including the title to the vehicle.

    c. A filing cabinet owned by Tolander which also contained the following items:
        i. Tolander's Birth certificate
        ii. Tolander's Tax Records
        iii. Tolander's Department of Transportation Drivers' Daily Inspection Sheets

    d. Thomas Kincaid Prints (5 prints), $200 to $2000 each, plus matting

    e. Sherman Labarge Bust statue, hand-carved Native American Figure, valued at $3,500.

41. Rausch has since failed to cause RT to provide Tolander with any tax documentation for 2016 or 2017 reflecting his compensation, making it impossible for Tolander to adequately manage payment of his taxes.

42. Tolander has unsuccessfully attempted to obtain copies of bank and check records from RT's Bank, Bank of Colorado, knowing such records would demonstrate the falsity of Smith and Rausch's accusations.  Upon information and belief, Rausch and Smith have instructed RT's bank, Bank of Colorado, not to provide Tolander with check records and accounting records.

43. At all times during the transactions described above, Tolander was a member of RT.  Tolander resigned his membership in RT after the transactions described above took place.

44. Due to the nature of the facts alleged in this Complaint, it would be futile for Tolander to make any demand that Rausch initiate any lawsuit by RT in connection with the claims stated herein, as the actions set forth herein would require Rausch to authorize a lawsuit by RT against himself.  Rausch has exercised exclusive control over RT for his own benefit, and at all times material to the facts stated in this Complaint, was a RT's majority member.  RT's claims in this matter are against Rausch.

45. This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

46. As RT's only other member at the time that the actions addressed in this Complaint occurred, Tolander fairly and adequately represents any and all similarly situated members of RT.

**First Claim for Relief: Breach of Fiduciary Duty**
**(Tolander Individually and Derivatively on behalf of RT against Rausch)**

47. Tolander hereby realleges and incorporates the above paragraphs as if fully stated herein.

48. RT never had an operating agreement and was a member-managed limited liability company.  At all times material to the facts and matters alleged in this complaint, the conduct of Rausch and Tolander with respect to RT was governed by C.R.S. § 7-80-101, et seq.

49. Rausch owed fiduciary duties to Tolander in the conduct of RT's business.

50. Rausch owed fiduciary duties to RT, including but not limited to the following:

    a. to account to RT and hold as trustee for it any property, profit, or benefit derived by the member or manager in the conduct or winding up of RT's business or derived from a use by the member or manager of property of RT, including the appropriation of an opportunity of RT;

    b. to refrain from dealing with RT in the conduct or winding up of the limited liability company business as or on behalf of a party having an interest adverse to RT;

    c. to refrain from competing with the limited liability company in the conduct of the limited liability company business before the dissolution of the limited liability company;

    d. to exercise a duty of care in the conduct and winding up of the business of RT, specifically to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

    e. to discharge his duties to RT and exercise any rights consistently with the contractual obligation of good faith and fair dealing.

51. Rausch knowingly and willfully breached the above fiduciary duties to RT and to Tolander through his conduct described herein.

52. As a result of Rasuch's breach of his fiduciary duties to RT and to Tolander, RT and Tolander have been damaged in an amount to be determined at trial.

**Second Claim for Relief: Civil Theft**
**(Tolander Derivatively on behalf of RT against Rausch, Smith, and Sterling Diesel)**

53. Tolander hereby realleges and incorporates the above paragraphs as if fully stated herein.

54. Rausch, acting in concert with Smith and Sterling Diesel as alleged herein, willfully, knowingly, and without authorization obtained control over RT's property as described herein.

55. Rausch did so with intent to permanently deprive RT of the benefit of that property as described herein.

56. Smith knowingly participated and assisted Rausch in his efforts to permanently deprive RT of its personal property as alleged herein.

57. Rausch, Smith, and Sterling Diesel are liable to RT for civil theft pursuant to C.R.S. § 18-4-401, et. seq. including treble damages and attorney's fees, in an amount to be determined at trial.

**Third Claim for Relief: Civil Theft**
**(Tolander Individually against Rausch and Smith)**

58. Tolander hereby realleges and incorporates the above paragraphs as if fully stated herein.

59. Rausch willfully, knowingly, and without authorization obtained control over Tolander's personal property as described herein.

60. Rausch orchestrated the seizure of Tolander's personal property with specific intent to permanently deprive Tolander of the benefit of that property as described herein.

61. Smith knowingly participated and assisted Rausch in his efforts to permanently deprive Tolander of his personal property as alleged herein.

62. Rausch and Smith are liable to Tolander for civil theft pursuant to C.R.S. § 18-4-401, et. seq. including treble damages and attorney's fees, in an amount to be determined at trial.

### Fourth Claim for Relief: Replevin
### (Tolander Individually against Rausch Pursuant to
### Fed. R. Civ. P. 64 and Colo. R. Civ. P. 104)

63. Tolander hereby realleges and incorporates the above paragraphs as if fully stated herein.

64. Tolander is the owner of the property described in Paragraph 40 of this complaint.

65. Rausch wrongfully came into possession of the property as described herein.

66. The property subject to replevin is described in Paragraph 40 of this complaint.

67. The property descried herein was not taken as a tax assessment or fine pursuant to a statute, or seized under an execution against Tolander's property.

68. Tolander is entitled to immediate possession of the property described in Paragraph 40.

### Fifth Claim for Relief: Accounting Pursuant to C.R.S. § 7-80-408

69. Tolander hereby realleges and incorporates the above paragraphs as if fully stated herein.

70. RT and Tolander have a right to an accounting from Rausch, conducted at Rausch's expense concerning the conduct and windup of RT's business.

71. Tolander has demanded access to RT's accounting records in connection with the windup of its business and been denied such assess as alleged more fully herein. Further demands for an accounting would be futile.

72. This Court should order an accounting conducted at Rausch's expense to account for the disposition of RT's assets and the windup of its affairs, and should direct disposition of RT's assets consistent with RT's obligations for dissolution under C.R.S. 7-80-803.

**Sixth Claim for Relief: Fraudulent Transfer Pursuant to C.R.S. § 38-8-101, et seq.
(Tolander Derivatively on behalf of RT against Rausch, Smith, and Sterling Diesel)**

73. Tolander hereby realleges and incorporates the above paragraphs as if fully stated herein.

74. Rausch and Smith, with actual intent to hinder, delay and defraud creditors of RT, wrongfully transferred RT's assets from RT to Sterling Diesel as alleged herein.

75. Rausch and Smith knew these wrongful transfers of assets would render RT insolvent and unable to pay its debts as they became due.

76. In transferring the assets to Sterling Diesel, as alleged herein, RT's assets effectively remained under Rausch's control.

77. Sterling Diesel was not a good-faith recipient of RT's assets.

78. The transfer of RT's assets to Sterling Diesel should be voided pursuant to C.R.S. § 38-8-108 and/or any remaining assets of RT still in Sterling Diesel's possession attached.

79. In addition to and/or in the alternative, judgment should be entered against Rausch, Smith, and Sterling Diesel for one and one-half the value of the assets fraudulently transferred or for one and one-half the amounts necessary to satisfy any creditors' claims against RT, whichever is less, in an amount to be determined at trial.

**Seventh Claim for Relief: Civil Conspiracy**

**(Tolander Individually and Derivatively on behalf of RT against Rausch, Smith, and Sterling Diesel)**

80. Tolander hereby realleges and incorporates the above paragraphs as if fully stated herein.

81. Rausch and Smith agreed amongst themselves to work together to deprive Tolander of his rights under Colorado law with respect to the conduct of RT's business and dissolution of RT as described herein, with Smith acting as Rausch's "henchman" while Rausch undertook to steal RT's assets and Tolander's personal property as alleged herein. Sterling Diesel agreed to receive the proceeds of this unlawful conspiracy as described herein.

82. Rausch, Smith, and Sterling Diesel's conduct as described herein included one or more unlawful acts which were performed to accomplish an unlawful, or in the alternative, lawful goal.

83. In the alternative, Rausch, Smith, and Sterling Diesel's conduct as described herein included one or more lawful acts which were performed to accomplish an unlawful goal.

84. As a direct and proximate result of Rausch, Smith, and Sterling Diesel's civil conspiracy as described herein, Tolander and RT have been damaged in an amount to be determined in an amount to be determined at trial.

**Eighth Claim for Relief: Windup and Liquidation under
Judicial Supervision Pursuant to C.R.S. 7-80-810(4)
(Tolander Derivatively on Behalf of RT against Rausch)**

85. Tolander hereby realleges and incorporates the above paragraphs as if fully stated herein.

86. Rausch has voluntarily dissolved RT. However, for reasons stated herein, its business and affairs were never properly liquidated or wound up.

87. For the reasons stated above, the business and affairs of RT should be wound up and liquidated under judicial supervision in accordance with C.R.S. § 7-80-803.

WHEREFORE, for the reasons state above, Walter Tolander, individually and derivatively on behalf of RT Transportation, LLC respectfully requests this Court grant the following relief:

A. Entry of an award of damages against Rausch and in favor of RT for breach of fiduciary duty, civil theft, civil conspiracy and fraudulent transfer in an amount to be determined at trial, including an award of treble damages and attorney's fees pursuant to C.R.S. § 18-4-405, and all available remedies pursuant to C.R.S. § 38-8-108 as may be determined at trial, and an award of punitive damages;

B. Entry of an award of damages against Rauch and in favor of Tolander for breach of fiduciary duty, civil theft, civil conspiracy and fraudulent transfer in an amount to be determined at trial, including an award of treble damages and attorney's fees pursuant to C.R.S. § 18-4-405, and an award of punitive damages;

C. An order of Replevin against Rausch and such other relief as may be just and proper pursuant to Fed. R. Civ. P. 64 and C.R.C.P. 104.

D. A court ordered accounting requiring Rausch to account for his activities as required by the Colorado Limited Liability Company Act and appropriate orders as necessary to direct the disposition of RT's assets and liabilities pursuant to the requirements of C.R.S. 7-80-803.

E. Windup and liquidation under C.R.S. 7-80-810(4) under judicial supervision.

F. Entry of an award of damages against Smith and in favor of RT for civil theft, civil conspiracy and fraudulent transfer in an amount to be determined at trial, including an award of treble damages and attorney's fees pursuant to C.R.S. § 18-4-405, and all available remedies pursuant to C.R.S. § 38-8-108 as may be determined at trial, and an award of punitive damages;

G. Entry of an award of damages against Smith and in favor of Tolander, civil theft, civil conspiracy and fraudulent transfer in an amount to be determined at trial, including an award of treble damages and attorney's fees pursuant to C.R.S. § 18-4-405, and an award of punitive damages;

H. Entry of an award of damages against Sterling Diesel and in favor of RT for civil theft, civil conspiracy and fraudulent transfer in an amount to be determined at trial, including an award of treble damages and attorney's fees pursuant to C.R.S. § 18-4-405, and all available remedies pursuant to C.R.S. § 38-8-108 as may be determined at trial, and an award of punitive damages;

I. Entry of an award of all costs, reasonable attorney fees to the extent allowed under applicable law, and pre- and post-judgment interest;

J. Such other and further relief that this Court deems to be just and proper.

Respectfully submitted December 2, 2019.

THOMAS P. HOWARD, LLC

*/s/ William C. Groh*
William C. Groh, No. 43577
842 W. South Boulder Rd., Ste. 100
Louisville, CO  80027

*Attorney for Plaintiff*

16

## Verification

I, Walter Tolander, declare as follows:

I have personal knowledge of the matters set forth in the foregoing Verified Complaint.

If called on to testify I would competently testify as to the matters stated herein. I hereby affirm that the factual matters stated herein are true and accurate to the best of my knowledge, information, and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on 12-2-2019
(Date)

_____
Walter Tolander

17

Scanned with CamScanner